**L.T. BRADT, Appellant,**

v.

**Judy SEBEK, Earle Lilly, Piro & Lilly, P.C., Depelchin Children's Center, Baylor College of Medicine, Ernest Kendrick, Michael D. Cox, Jean Guez, Barbara Taylor, Luisa Maria Acevedo Lohner, Ann M. Hodges and Joel A. Nass, Appellees.**

No. 01–96–00943–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 13, 2000.

Rehearing Overruled April 7, 2000.

Paul E. Nunu, Houston, for Appellant.

John B. Wallace, Joy M. Soloway, Nancy J. Locke, J. Preston Wrotenbery, Kevin D. Jewell, Earle S. Lilly, Donald M. Hudgins,

Alfred C. Koenig, Joel A. Nass, Jim Barker, Houston, for Appellees.

Panel consists of Justices COHEN, NUCHIA, and DUGGAN.*

## OPINION

LEE DUGGAN, Jr., Justice (Retired).

Appellant, L.T. "Butch" Bradt, appeals a Rule 13 sanction order and its levy of a $100,000 fine, asserting six points of error. We affirm.

## I.

### Background

This appeal is the culmination of litigation originally filed in federal district court in 1989 by Mark Metzger against his former wife, her attorney, and various agencies and individuals (collectively, the "defendants"). The suit asserted various theories of state liability, as well as federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C.A. §§ 1961–1968 (1984 & Supp. 1999)) and a civil rights statute. The federal district court dismissed Metzger's federal claims and abstained from exercising jurisdiction over his pendent state law claims. Metzger refiled his claims in state court.[1] In 1992, following a month of trial and a directed verdict in favor of the defendants, the trial court assessed sanctions of $994,000 plus interest against Metzger and each of his attorneys. *See*

*Metzger v. Sebek*, 892 S.W.2d 20, 50 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Appellant was one of Metzger's attorneys.

On appeal, this Court affirmed the directed verdict and concluded that the defendants had proved their right to sanctions against Metzger, but that the trial court had awarded an excessive amount of sanctions. *Id.* at 48, 53. We also reversed and remanded the award of sanctions against appellant because his motion to recuse the trial judge, the Honorable David West, had been filed timely. *Id.* at 49–50. On remand, after Judge West voluntarily recused himself, the Honorable Scott Brister held a hearing, in accordance with our instructions, to determine (1) the amount of sanctions to be awarded against Metzger, (2) whether appellant violated Texas Rule of Civil Procedure 13, and if so, (3) the appropriate amount of sanctions to be assessed against him. Following the hearing, Judge Brister issued an April 8, 1996 written sanction order ("Sanction Order"), determining that appellant had violated Rule 13 and ordering appellant and Metzger each to pay $100,000 to the defendants (appellees in this appeal). Metzger did not appeal the Sanctions Order.

In appealing from the Sanctions Order, appellant raises six points of error.

## II.

### Standard of Review

■■■ This Court reviews a trial court's Rule 13 sanction order under an abuse of

---

\* The Honorable Lee Duggan, Jr., retired justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. As of the time of trial, Metzger's claims were for:
   (1) civil conspiracy;
   (2) civil conspiracy to extort from and defraud him of property and liberty interests protected by the Texas and United States Constitutions;
   (3) malicious prosecution;
   (4) "deprivation of civil rights based upon malicious prosecution";
   (5) intentional infliction of emotional distress;

   (6) medical negligence (asserted only against appellees Depelchin Children's Center, Baylor College of Medicine, Ernest Kendrick, Luisa Maria Acevedo Lohner, Michael D. Cox, and Barbara Taylor);
   (7) negligent infliction of emotional distress (asserted only against Depelchin, Baylor, Kendrick, Lohner, Cox, and Taylor); and
   (8) civil RICO.
   *Bradt v. West*, 892 S.W.2d 56, 61–62 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

discretion standard. *Laub v. Pesikoff,* 979 S.W.2d 686, 693 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). Our test for abuse of discretion is deferential to the trial court—whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985). Therefore, "[i]t is not necessarily an abuse of a trial court's discretion if under the same facts we would decide the matter differently, or if the court committed a mere error in judgment." *Tarrant County v. Chancey,* 942 S.W.2d 151, 154 (Tex.App.—Fort Worth 1997, no writ). Moreover, the trial court's discretion is limited only by the requirement that its order be just and that the sanction imposed be directly related to the harm done by the sanctioned conduct. *Ray v. Beene,* 721 S.W.2d 876, 879 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

## III.

### Discussion

**A. Point No. 1: Whether the trial court used the wrong burden of proof in determining whether to impose a punitive fine against appellant.**

Appellant argues in his first point of error that Judge Brister abused his discretion when he failed to apply a "beyond a reasonable doubt" standard in his Rule 13 hearing. He argues that, although Judge Brister specifically declined to hold him liable for criminal contempt, the proceedings against him "were in the nature of criminal contempt proceedings since he was being tried (and punished) for past behavior."

Texas Rule of Civil Procedure 13 provides:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith

or groundless and brought for the purpose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, *shall be held guilty of a contempt.* If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, *shall impose an appropriate sanction available under Rule 215.2(b),* upon the person who signed it, a represented party, or both.

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. A general denial does not constitute a violation of this rule. The amount requested for damages does not constitute a violation of this rule.

TEX. R. CIV. P. 13 (emphasis added). According to appellant, the underscored language of the first paragraph's second sentence, "shall be held guilty of a contempt," indicates that Rule 13 proceedings are *always* quasi-criminal contempt proceedings imposing criminal punishment for past behavior and, therefore, requiring criminal law constitutional standards and protections. He further points out that Rule 215–2b also authorizes contempt, among other sanctions. *See* TEX. R. CIV. P. 215.2(b).

Appellees respond that appellant's $100,000 fine was compensatory in nature and not a criminal punishment for past behavior, that Judge Brister specifically limited the sanction hearing to potential civil sanc-

tions against appellant, and that he declined to conduct a contempt proceeding.

■ Well settled principles guide the interpretation of Rule 13. Texas courts apply the same rules of construction to rules of procedure as to statutes. *In re VanDeWater*, 966 S.W.2d 730, 732 (Tex. App.—San Antonio 1998, no pet.); *Burrhus v. M & S Supply, Inc.*, 933 S.W.2d 635, 640 (Tex.App.—San Antonio 1996, writ denied). When a rule of procedure is clear, unambiguous, and specific, we construe its language according to its literal meaning. *Murphy v. Friendswood Dev. Co.*, 965 S.W.2d 708, 709 (Tex.App.—Houston [1st Dist.] 1998, no pet.) (interpreting Rule 13). We avoid constructions giving rise to constitutional infirmities. TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 1997). Finally, we note that rule interpretation is "a pure question of law over which the judge has no discretion." *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex.1997).

■ Applying these standards, it is clear that a Rule 13 sanction hearing need not involve a finding of contempt. The rule's first sentence generally addresses responsibility for instruments that are groundless and brought either in bad faith or for the purpose of harassment. Rule 13's second sentence addresses particularly egregious actions involving written pleadings, actions that rulemakers have determined *must* be dealt with as contemptuous conduct—(1) filing fictitious suits or pleadings to experiment or obtain court opinions or (2) making knowingly groundless and false pleadings in order to secure trial delays.

Rule 13's third sentence provides for "an appropriate sanction" under Rule 215.2(b). Because contempt has already been mandated for all instances of conduct described in the second sentence, the sanctions "available under Rule 215.2(b)" apply to the remaining proscribed conduct, namely, that set out in Rule 13's first sentence.

■ Reading sentences one and three together, a party who files a groundless pleading in bad faith or for the purpose of harassment is subject to a range of punishments under 215.2(b), one of which is a finding of contempt. Thus, the trial court can choose among a range of sanctions.

■ Here, Judge Brister explicitly declined to consider a contempt sanction, as he might have done under Rule 215.2(b). Neither did he find, under the proscribed conduct of Rule 13's second sentence, that Metzger or appellant filed a fictitious suit or fictitious pleadings "as an experiment to get an opinion of the court" or knowingly made false statements in pleadings "for the purpose of securing a delay of the trial of the cause." Instead, Judge Brister found more generally under Rule 13's first sentence that Metzger and appellant filed groundless pleadings in bad faith, and chose from the discretionary range of punishments available under 215.2(b) (excluding a possible contempt sanction, which he refused to consider). Because Judge Brister did not make the findings envisioned in Rule 13's second sentence, he was not required to hold appellant in contempt. Rather than decide now whether a finding of contempt under Rule 13 would require a criminal standard of review and implicate the constitutional or procedural rights applicable to criminal proceedings, we simply hold that Judge Brister's general finding that appellant filed a groundless pleading in violation of Rule 13 is, under this record, a civil matter.

The standard of review of a trial court's imposition of a civil sanction under Rule 13 is clear—we review the trial court's decision for abuse of discretion. *See Laub*, 979 S.W.2d at 693. Therefore, our inquiry will turn on whether the Sanction Order is arbitrary or unreasonable.

Appellant's first point of error is overruled.

### B. Point No. 2: Whether appellant was entitled to a jury trial on the assessment of punitive fines.

■ Appellant argues in his second point of error that he was entitled to a jury trial on the assessment of his Rule 13 sanction because his $100,000 fine is a "serious offense" implicating a constitutional Sixth Amendment right to a jury trial. The record reflects, however, that appellant never requested a jury for the sanctions proceeding. Appellant concedes that he did not request a jury trial on the issue of Rule 13 sanctions, but argues that he was entitled to rely on the initial jury demand in the underlying trial. But appellant was not a party in the underlying trial, and, in any event, he failed to object to the trial court's role as fact finder at his sanctions hearing. Therefore, appellant's second point of error is waived. *See generally Rodriguez v. Texas Dept. of Mental Health and Mental Retardation*, 942 S.W.2d 53, 56 (Tex.App.—Corpus Christi 1997, no writ) (holding that a party waives his right to a jury trial by failing to object when the trial court undertakes to try the case before the bench).[2]

Appellant's second point of error is overruled.

### C. Point No. 3: Whether appellant was denied due process when the court declined to hear his special exceptions.

■ Appellant next argues that he was denied due process of law because the defendants'/appellees' motions for sanctions were not sufficiently specific and Judge Brister refused to consider his "Special Exceptions and Motion for Specifics of Complaint." He argues that he was entitled to "full and complete notice of the subject matter and ... when, how, and by

what means [he] has been guilty of the alleged defect," citing *Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex.1969). Appellant also asserts that he was entitled to reasonable notice of each alleged contemptuous act, citing *Ex parte Brister*, 801 S.W.2d 833 (Tex.1990). These and other cases appellant cites, however, arise in the context of criminal contempt proceedings.

Because appellant's Rule 13 hearing was a civil proceeding, his non-Rule 13 contempt cases are inapposite. He cites no cases holding that adequate notice for a Rule 13 hearing requires anything more than (1) notice of the date of the hearing and (2) notice that Rule 13 is the basis for potential sanctions. Texas case law tracks Federal Rule of Civil Procedure 11, and notice under that rule is satisfied when a party is put on notice that the opposing party will seek, and the trial court may impose, Rule 11 sanctions. *See Monroe v. Grider*, 884 S.W.2d 811, 817 (Texas App.— Dallas 1994, writ denied) (Texas courts "look to cases interpreting Federal rule 11 to interpret rule 13"); *Merriman v. Security Ins. Co. of Hartford*, 100 F.3d 1187, 1191 (5th Cir.1996) (finding that the other party's "series of letters, ultimata, and motions put [appellant] on notice that [the other party] would seek, and the district court might impose, Rule 11 sanctions").

We find that appellant was adequately apprised of the date of his Rule 13 sanctions hearing and that he would be potentially liable under Rule 13 for any pleadings that were groundless or filed in bad faith.

· Appellant's third point of error is overruled.

### D. Point No. 4: Whether the trial court's sanctions violate double jeopardy

2. Further, this Court has already determined that "[t]here is no right to a trial by jury on the issue of whether rule 13 has been violated." *Neely v. Commission for Lawyer Discipline*, 976 S.W.2d 824, 827 (Tex.App.—Houston [1st Dist.] 1998, no pet.); *see also Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex.1984) (per curiam) (rejecting the proposition that "one

complaining of the award of attorney's fees as sanctions has the right to a jury trial to determine the amount of such attorney's fees" and holding that "the amount of attorney's fees awarded as sanctions for discovery abuse is solely within the sound discretion of the trial judge, only to be set aside upon a showing of clear abuse of that discretion").

protections of the Texas and United States constitutions.

■ Appellant argues that he was subjected to constitutionally impermissible double jeopardy because he was subjected to a Rule 13 sanction after he was twice held in contempt for his conduct in the underlying trial.

■ Federal and state constitutional due process provisions are identical. *Phillips v. State*, 787 S.W.2d 391, 393 n. 2 (Tex.Crim.App.1990); *Gongora v. State*, 916 S.W.2d 570, 576 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). The double jeopardy clause of the fifth amendment prohibits:

(1) a second prosecution for the same offense after acquittal;

(2) a second prosecution for the same offense after conviction; and

(3) multiple punishments for the same offense.

*Id.* at 576.

Here, appellant contends he was entitled to double jeopardy protection under state and federal law because "the sanctions proceeding had many of the aspects of a criminal contempt proceeding and [appellant] could have been punished by incarceration, had Judge Brister chosen to do so." His argument is that, because he was held in contempt for his conduct at trial and was subsequently sanctioned under Rule 13, he was punished more than once for the same criminal offense.

■ We disagree. While appellant was held in contempt earlier for his conduct *during* trial, this Rule 13 proceeding dealt with actions he took *before* trial. Judge Brister specifically noted in several parts of the Sanction Order that appellant's actions during and after trial were not sanctionable, but merely indicative of appellant's bad faith intent prior to trial in filing groundless pleadings for Metzger. The Double Jeopardy Clause does not bar the use of evidence from one offense to establish intent in a separate offense.

*United States v. Felix*, 503 U.S. 378, 386–87, 112 S.Ct. 1377, 1382–83, 118 L.Ed.2d 25 (1992). Appellant is not being punished more than once for the same offense; his fourth point of error is overruled.

**E. Point No. 5: Whether the trial court abused its discretion in imposing Rule 13 sanctions against appellant.**

■ Appellant contends that Judge Brister abused his discretion in assessing Rule 13 sanctions against him. As an initial matter, appellant argues, without citing any authority, that this Court should employ a directed verdict standard to review the facts available to him when he signed various pleadings for his client in the underlying trial. Under a directed verdict standard, we would "view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences." *Qantel Bus. Sys. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex.1988). As discussed earlier, however, we review Rule 13 sanctions for abuse of discretion; appellant is urging the wrong standard of review. He also attacks the trial court's findings on the apparent theory that the order should be overturned if *some* of the factual findings of the court were in error. However, a trial court's Rule 13 Sanction Order must be upheld if *any* of the facts set forth by the court supports the sanctions. *See, e.g., Monroe*, 884 S.W.2d at 816 n. 3, 819 (Tex.App.—Dallas 1994, writ denied) (upholding sanctions when five of seven fact findings supported the sanctions); *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex.App.—Dallas 1993, no writ) (judgment imposing sanctions will be upheld "on any applicable theory that finds support in the record").

Rather than undertake to refute appellant's contentions on a point-by-point basis, we instead address those findings that support a Rule 13 sanction.

### 1. Whether appellant's claims are groundless.

Appellant was the attorney of record for Metzger's second, third, fourth, and fifth amended petitions and for Metzger's response to the defendants' motion for summary judgment. Thus, under Rule 13's first and third sentences, appellant is subject to sanctions for pleadings he signed on Metzger's behalf if those pleadings are groundless and he signed them in bad faith. TEX. R. CIV. P. 13.

■ Rule 13's second paragraph defines "groundless" as

(1) "no basis in law or fact"; *and*

(2) "not warranted by good faith argument for the extension, modification, or reversal of existing law."

*Id.* Before Judge Brister was directed to conduct this sanction dispute, this Court had already conclusively determined that none of Metzger's claims, as appellant articulated them, had a basis in law or fact.[3] The only issue properly before Judge Brister with respect to the groundlessness of the pleadings appellant filed for Metzger was whether there was a "good faith argument for the extension, modification, or reversal of existing law" when appellant signed the pleadings.

Appellant's following arguments could be construed as attempts to articulate a good faith argument for the extension or change of law existing at the time he drafted Metzger's pleadings.

### a. The duty of mental health professionals to the parents of patients for negligent misdiagnosis.

■ Appellant argues that, at the time he filed Metzger's pleadings, he made a good faith argument in asserting that mental health professionals owe a duty to the parent not to negligently misdiagnose a child patient's condition. He cites *W.C.W. v. Bird*, 840 S.W.2d 50, 56 (Tex.App.—Houston [1st Dist.] 1992), *rev'd*, 868 S.W.2d 767 (Tex.1994), and *James v. Brown*, 637 S.W.2d 914, 916–18 (Tex.1982). Assuming appellant's claim of negligent misdiagnosis had a good faith *legal* basis, however, Judge Brister found that a cursory investigation of the *facts* would have revealed that Metzger could not show actionable negligence. We noted in our previous opinion that ample evidence gave probable cause to the professionals examining Metzger's son that the boy had been sexually molested and that Metzger was implicated.[4] The child's bizarre and disturbing behavior, detailed in our previous opinion, was fatal to a good faith allegation that any of the defendants breached a duty by negligently misdiagnosing Metzger's son.

### b. Negligent infliction of emotional distress.

■ Judge Brister cited *Boyles v. Kerr*, 855 S.W.2d 593 (Tex.1993), for the proposition that negligent infliction of emo-

---

**3.** Specifically, we concluded in the appeal from the underlying judgment that Judge West's directed verdict on all of the client Metzger's claims was proper "because (1) some were not viable to begin with, and (2) there was no evidence to support the ones that were viable." *Bradt*, 892 S.W.2d at 64 (summarizing the Court's analysis of claims in *Metzger v. Sebek*, 892 S.W.2d 20 (Tex. App.—Houston [1st Dist.] 1994, writ denied)). Furthermore, we determined there was "abundant evidence" of probable cause against Metzger, which obviated his malicious prosecution claim, and held that each of Metzger's conspiracy claims was unproved after more than a month of trial. *Metzger*, 892 S.W.2d at 43–47. Our opinion also affirmed

Judge West's ruling dismissing Metzger's RICO claim and held that Metzger had failed to prove an essential element of his infliction of emotion distress claim. *Id.* at 47–48. Judge Brister expressly took judicial notice of the findings of this Court in the Sanction Order.

**4.** Specifically, this Court found that "Metzger was strongly implicated in the sexual abuse of [his son] by (1) [court-appointed psychologist] Guez, after observing and evaluating [Metzger's son]; (2) [his former wife] Sebek after speaking with [Metzger's son]; and (3) [the son] himself, who implicated him on several occasions." *Metzger*, 892 S.W.2d at 43.

tion distress is not recognized in Texas. Appellant points out that the court of appeals opinion in *Boyles* had recognized such a claim and argues that he could not have known that the Texas Supreme Court would overrule *Boyles* in 1993. However, outrageous conduct is a necessary element of claims for both negligent and intentional infliction of emotional distress. *Massey v. Massey*, 807 S.W.2d 391, 399 (Tex.App.—Houston [1st Dist.] 1991), *writ denied per curiam*, 867 S.W.2d 766 (Tex.1993). After more than a month in trial to prove outrageous conduct, appellant failed to provide any evidence of this essential element of Metzger's claim. *Metzger*, 892 S.W.2d at 39, 48. Therefore, appellant has not articulated a good faith basis for such a claim under these facts.

**c. Cause of action against opposing counsel for representing opposing party in a judicial proceeding.**

■ Judge Brister cited *Bradt v. West*, 892 S.W.2d 56, 71–72 (Tex.App.—Houston [1st Dist.] 1994, writ denied), for the proposition that a party has no cause of action against opposing counsel for representing an opposing party. Appellant contends *Bradt*'s holding on this subject was limited to the conclusion that *an attorney* has no cause of action against an opposing party's attorney and that it was Metzger, the client, who sued opposing counsel. Additionally, appellant complains that *Bradt* was decided after Metzger's pleadings were filed.

However, Judge Brister cited *Bradt v. West* for its discussion of cases supporting the proposition that there is no cause of action against opposing counsel for representing a client in a judicial proceeding, and those cases predate appellant's pleadings. *See id.* at 71. Appellant had before him ample precedent to recognize that Texas case law frowns on suing opposing counsel simply for representing a party in a judicial proceeding. *See, e.g., Morris v. Bailey*, 398 S.W.2d 946, 947 (Tex.Civ. App.—Austin 1966, writ ref'd n.r.e.); *ac-*

*cord Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex.App.—Houston [1st Dist.] 1985, no writ). Appellant has provided no relevant authorities in support of this cause of action.

**d. Cause of action for tortious conspiracy.**

■ Judge Brister found that many of the alleged conspirators had never met each other, much less participated in regular meetings or communications in furtherance of a conspiracy. Appellant cites cases stating the undisputed proposition that an agreement may be informal and tacit and that a civil conspiracy can be established by circumstantial evidence. *See, e.g., International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581–82 (Tex.1963); *Bourland v. State*, 528 S.W.2d 350, 354–55 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). Judge Brister's finding, however, turned on the complete lack of evidence to support appellant's allegations of conspiracy. Appellant's cases do not support a good faith extension of the law to impose liability on unrelated parties who are not in agreement with each other.

■ Additionally, conspiracy is not an independent, actionable claim. As the Texas Supreme Court has observed:

> Civil conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, might be called a derivative tort.... That is, a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.

*Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996). Therefore, even if he had been able to show some sort of tacit agreement between the defendants, appellant's inability to articulate even one actionable underlying tort claim is fatal to his conspiracy allegations. *See, e.g., Hoggett v. Brown*, 971 S.W.2d 472, 493 (Tex.

App.—Houston [14th Dist.] 1997, pet. denied) (concluding there was no actionable conspiracy claim once the court had determined the defendants did not owe a fiduciary duty to the plaintiff because "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of named defendants liable").

### e. Standing to assert RICO claim.

■ Judge Brister found the RICO claim was groundless because Metzger lacked standing. Appellant summarily states that Metzger had standing to assert a RICO claim because the defendants billed his insurance carrier and Metzger personally paid bills that were incurred, pursuant to an ongoing criminal enterprise. Appellant also argues the bills Metzger's insurance company paid constitute injury to Metzger. We earlier expressly determined, however, that Metzger lacked standing because he failed to show in the "record that he was injured in his business or property by any predicate act of racketeering activity." *Metzger*, 892 S.W.2d at 47. It was this failure to establish any underlying, predicate racketeering activity that was fatal to the issue of standing.

■ Appellant also mentions evidence related to a Medicare Fraud Control Unit Report (without citing to the record) that he claims would have supported his allegations of a criminal enterprise, had Judge West not prevented him from exploring the issue. In considering whether a claim is groundless within the meaning of Rule 13, we do examine inadmissible evidence. *See, e.g., Donwerth v. Preston II Chrysler–*

*Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex. 1989). Nevertheless, appellant does not establish a good faith basis to argue that Metzger had standing to pursue a RICO claim by making unsupported assertions on appeal that he was prevented from exploring unidentified evidence that he summarily claims might have shown racketeering activity by the defendants.

For all the reasons discussed above, Metzger failed to establish a good faith basis for changing the underlying law. Therefore, we find that Judge Brister did not abuse his discretion in determining that all of the claims articulated by appellant for Metzger are groundless.

### 2. Whether appellant brought his pleadings in bad faith.

■ Because Judge Brister's order did not err in finding that appellant's pleadings were groundless, Rule 13 sanctions are warranted if the pleadings were asserted in bad faith or for the purpose of harassment.

Judge Brister made numerous persuasive findings of bad faith. First, he noted that appellant personally sued the defendants, their attorneys and insurers, and court personnel, following Judge West's directed verdict in the underlying trial.[5] Judge Brister noted that, although this subsequent spate of litigation was not sanctionable in the dispute before him concerning appellant's pre-trial conduct, it was evidence of bad faith. Judge Brister also observed that, as of the time of the underlying trial, appellant had failed to take the deposition of even one of the defendants. Judge Brister found that (1)

---

**5.** The Sanction Order states that appellant brought two actions following the directed verdict—first in federal court and then a subsequent suit in state court. In fact, appellant personally brought suit only in state court against Judge West, the defendants, their attorneys and insurers, and the contempt prosecutor. *See Bradt*, 892 S.W.2d at 65. In federal court, however, appellant brought suit *on behalf of* Metzger against the defendants, Metzger's former wife, and the prosecutor

who prosecuted Judge West's contempt charge. *Id.* at 64. Nevertheless, any error in this misstatement is harmless. The overarching fact of importance is that appellant personally sued the other parties, their counsel, and court personnel. Under these facts, Judge Brister did not abuse his discretion in finding this behavior indicative of appellant's bad faith and intent to harass in filing Metzger's pleadings prior to trial.

even a cursory inquiry would have revealed that the defendants had not met or communicated in furtherance of a conspiracy; (2) that the term "rule out" (as used in reference to the possibility that Metzger's son had been sexually abused) was not exculpatory, as appellant had maintained through the time of Judge Brister's Rule 13 sanction hearing, but rather meant that a possible diagnosis of sexual abuse should be considered; and (3) that Defendant Cox, who was sued for allegedly implicating Metzger before a grand jury in the sexual abuse of his son, had actually testified to the contrary—that Metzger's conduct was inconsistent with that of a sex offender. .

As discussed earlier, appellant alleges (without citing to the record) that he could have proved a conspiracy if he had been allowed to pursue excluded evidence. Nevertheless, the record clearly reflects appellant failed to show any evidence of a conspiracy. Moreover, he does not substantively contest his misunderstanding at trial of either the term "rule out" or the relatively favorable testimony of Defendant Cox.[6] Judge Brister had ample basis to find that the pleadings appellant signed were not made after reasonable inquiry, as required by Rule 13.

Judge Brister found that, as a consistent pattern of conduct, appellant violated Judge West's motion in limine. Judge Brister noted our finding in *Metzger* that "Metzger's attorneys repeatedly violated the order in limine; violated other orders of the court; interrupted the judge; grumbled audibly about rulings; [and] laughed at the judge." *Metzger*, 892 S.W.2d at 39. However, Judge Brister expressly noted that this conduct was not itself sanctionable in the Rule 13 dispute before him, but rather evinced appellant's bad faith prior to trial in filing Metzger's pleadings.

Judge Brister also found that the allegations of a vast conspiracy, the evidence that none of the defendants had accused Metzger of sexual abuse or sought his indictment, and the surrounding context of Metzger's divorce and child custody proceeding all should have alerted appellant that Metzger's motivation was to exact revenge against his former wife and others who got involved in their dispute. Finally, Judge Brister found that the large number of defendants (whom appellant barely investigated to determine whether they actually did any of the acts alleged) and the protracted trial proceedings, which lasted for more than a month, based in part on appellant's elicitation of often irrelevant information, all indicated that appellant's purpose in filing suit was to harass the defendants.

Appellant has provided this court with no valid argument or authority to show that Judge Brister abused his discretion in concluding that appellant's intent was to abuse or harass the defendants in bad faith with frivolous claims.

### 3. Whether the $100,000 sanction was proportionate to the harm.

█ Having concluded that Judge Brister did not abuse his discretion in determining that the pleadings signed by appellant were groundless and brought in bad faith or to harass the defendants, the only issues remaining are (1) whether the $100,000 sanction imposed is directly related to the offensive conduct and (2) whether the amount is excessive. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991).

Appellant was the attorney of record on Metzger's second, third, fourth, and fifth amended petitions in state court, yet failed to nonsuit even one defendant or drop any of Metzger's groundless claims. Judge Brister's order found (and appellant does

---

**6.** Appellant continues to suggest, without explanation, that he fairly characterized Defendant Cox's testimony as unfavorable to Metzger. But under questioning at his Rule 13 hearing before Judge Brister, appellant failed to provide a single instance in which the record reflected Cox gave testimony that would constitute a basis for a cause of action.

not contest) that the defendants' fees and expenses after Metzger signed a false affidavit opposing the defendants' motion for summary judgment (which alone accounts for the fact that Metzger's claims proceeded to trial) totaled nearly one million dollars. Appellant should have known early on that Metzger's claims were groundless. Metzger's untenable claims resulted in approximately ten times more expense to the defendants than appellant was fined. Thus, appellant and Metzger were each fined only a fraction of the cost they forced the defendants to incur.

■ If anything, appellant's sanction was disproportionately small. In our previous opinion, we reversed Metzger's sanction because we deemed it excessive that Metzger, who is not an attorney, should be made to bear the full expense of the defendants' costs incurred because of his one independently sanctionable act, *i.e.*, the signing of an affidavit containing intentionally false information. Rather, we determined that Metzger should be fined a smaller amount because he was responsible under Rule 13 only for his individual affidavit, not the pleadings as a whole. *See Metzger*, 892 S.W.2d at 52–54. In particular, we noted that "in assessing sanctions for violating rule 13, a party should not be punished for its counsel's conduct 'unless the party is implicated apart from having entrusted its legal representation to counsel.'" *Id.* at 52 (quoting from *Glass v. Glass*, 826 S.W.2d 683, 687 (Tex.App.—Texarkana 1992, writ denied)). Thus, a party may be subject to a smaller subsection of sanctionable conduct under Rule 13 than his attorney; the party must be implicated for his unique conduct separate from the attorney's representation, while the attorney may be generally liable for each groundless pleading.

Here, where all of the pleadings appellant filed on Metzger's behalf are groundless, appellant was responsible for each such pleading, while Metzger was independently at fault only for signing an affidavit

for which he intentionally supplied false information.

We previously reversed the sanction against appellant solely because of his motion to recuse Judge West. *See id.* at 49–50. Appellant, an experienced attorney, should have known that Metzger's pleadings were groundless as a matter of law. Judge Brister temperately—indeed, charitably—sanctioned appellant for no more than the amount Metzger was sanctioned, approximately ten percent of the costs incurred by the defendants after Metzger's false pre-trial affidavit that defeated the defendants' motion for summary judgment.

Appellant's fine was, therefore, directly related to his abusive pleading practices and was by no measure disproportionately large to the harm appellant inflicted.

The Sanction Order specifically attributes the waste of time and money incurred by the defendants to appellant's frivolous pleadings.

The trial court did not abuse its discretion in assessing a $100,000 fine against appellant.

Appellant's fifth point of error is overruled.

**F. Point No. 6: Whether the trial court's Sanction Order is void for lack of particularity.**

■ Appellant argues that Judge Brister's Sanction Order fails for lack of specificity. A Rule 13 sanction order must state with particularity "good cause for finding that [appellant's] pleadings were groundless and not brought in good faith or groundless and brought for purposes of harassment," or else there is abuse of discretion. *Johnson v. Smith*, 857 S.W.2d 612, 617 (Tex.App.—Houston [1st Dist.] 1993, no writ).

■ Appellant's argument appears to be that if any finding of the trial court was in error, the entire order is void. "[A] trial court's failure to make particular findings in a rule 13 order may constitute harmless error when the trial court's find-

ings of fact and conclusions of law supply the particulars of good cause required by rule 13." *Gorman v. Gorman*, 966 S.W.2d 858, 867–68 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). Here, Judge Brister expressly took judicial notice of this Court's determination that all of appellant's arguments were flawed "because (1) some were not viable to begin with, and (2) there was no evidence to support the ones that were viable." *Bradt*, 892 S.W.2d at 64. The Sanction Order independently set out factual findings and conclusions of law regarding the claims.

In assessing the sanctions, Judge Brister specifically noted, among other findings, that "appellant was informed of the obvious legal impediments to Plaintiff's claims, knew of the unquestionable evidence contrary to those claims, [and] took a shotgun approach to joining parties without further consideration." Appellant argues at one point, however, that Judge Brister erred in finding that he frivolously joined "parties," when appellant joined only one party. Any alleged error from this factual finding is harmless; the Sanction Order adequately sets out with particularity factual findings that adequately provide good cause for sanctioning appellant for attorney's fees. *See, e.g., Gorman*, 966 S.W.2d at 867–68.[7]

Appellant's sixth point of error is overruled.

The defendants on appeal have requested that we also sanction appellant for frivolously filing this appeal. Although appellant's pleadings in the court below on Metzger's behalf were indeed groundless, appellant has urged several issues that are at least colorable, though not warranting reversal. Under these facts, we do not sanction appellant for filing this appeal.

In accordance with a joint motion of Bradt and appellee Judy Sebek following a settlement between them, this Court is-

sued a June 3, 1999 interlocutory order reversing the award of sanctions in favor of Sebek and rendering a take-nothing judgment as to her.

We affirm the judgment as to the remaining defendants.

---

7. In any case, it is undisputed that appellant filed the second, third, fourth, and fifth amended petitions in state court, and responded to the defendants' motion for summary judgment, without nonsuiting the many defendants who fell within the ambit of Metzger's allegations.